**Roy E. SCHWASINGER, Plaintiff,**

v.

**Joseph M. PRICE, M.D., Joseph A. Price, and Alta Enterprises, Inc., Defendants.**

Civ. A. No. 90–2048–T.

United States District Court, D. Kansas.

March 11, 1992.

Roy E. Schwasinger, pro se.

Ernest L. Johnson, Kansas City, Kan., Ronald J. Varga, Detroit, Mich., for defendants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the plaintiff's motion for summary judgment (Doc. 144) and defendants' motion for summary judgment (Doc. 147). This matter was set for jury trial on the Kansas City docket to commence Monday, December 9, 1991. After hearing the statements of the plaintiff, who is proceeding pro se, and the defendants' counsel, the court perceived certain problems with this case and determined that this matter could not proceed to jury trial at that time. The court accepted the oral motions for summary judgment made at the pretrial hearing and granted the parties thirty (30) days to file cross motions for summary judgment. To prevent manifest injustice, *see* Fed.R.Civ.P. 16(e), the court amended the final pretrial order to extend the deadline for the filing of dispositive motions until January 8, 1992.

The court first must address some of the specific issues raised in the plaintiff's motion and other pleadings. None of the attorneys whom plaintiff accuses of wrongdoing are parties to this action. Therefore, the court could not award damages to be paid by them nor require them to post a supersedeas bond, even if the court determined that such was warranted by the facts. The fact that defendants' attorney Ronald J. Varga did not appear at the pretrial conference does not constitute any wrongdoing on his part. Defendants' local counsel Ernest Johnson appeared at the pretrial conference. Mr. Varga is one of the attorneys of record for the defendants. Pleadings bearing his signature were properly accepted by the Clerk for filing. Therefore, the striking of pleadings bearing his signature is not appropriate and plaintiff is not entitled to costs.

The fact that the copy of a prior court order that plaintiff received did not bear the signature of the Honorable Earl E. O'Connor does not invalidate the order. As a matter of routine, the Clerk's office uses a signature stamp on copies of orders. The original order filed in the Clerk's office bears the signature of Judge O'Connor. Judge O'Connor did not recuse from the case, as alleged by plaintiff. He merely transferred the case to the undersigned for further proceedings.

Plaintiff argues in his motion for summary judgment that various named attorneys who have participated in the litigation of this matter are guilty of professional negligence. The court would point out that these attorneys and their law firms are not parties to this action. Plaintiff's claims as contained in his complaint and the pretrial order do not include claims for professional negligence, misrepresentation, conspiracy or fraud. Therefore, the court cannot consider these allegations in ruling on the motions for summary judgment.

In plaintiff's motion for summary judgment, he appears to argue that this case should have been settled. It became obvious to the court at the pretrial hearing and is again obvious from reading the submissions that the parties failed to agree on

settlement terms. Defendants offered to assign to plaintiff the full copyrights for the published book entitled *Coronaries/Cholesterol/Chlorine*, authored by defendant Joseph M. Price, M.D. Plaintiff notes in his brief (Doc. 145) that he "understood" that two registered copyrights would be assigned to him. Since the parties have not agreed on the terms of a settlement, there is no settlement agreement to be enforced. The matter is properly before the court on the cross motions for summary judgment.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim. Rule 56, however, imposes no requirement on the moving party to "support its motion

with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials contained in the nonmoving party's pleadings, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

■ At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge when *ruling on a motion for summary* judgment. The evidence of the nonmoving party is to be believed. All justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 255, 106 S.Ct. at 2513.

Plaintiff's complaint contains five counts, including breach of contract (Count I), unjust enrichment (Count II), and anticipatory breach of contract (Count IV). Additionally, plaintiff seeks an order declaring him to be coauthor of a manuscript entitled *Diet/Coronaries/Cholesterol/Chlorine* (Count III) and injunctive relief for alleged false designations (Count V). Based on the court's review of the exhibits and the admissions made during the hearing on December 9, 1991, there appear to be no genuine issues of material fact as to any of these claims.

The relevant facts are as follows.

1. On April 7, 1989, defendants Joseph A. Price and Joseph M. Price, M.D. entered into an agreement entitled Manuscript Marketing Agreement with plaintiff Roy E. Schwasinger and former plaintiff Earl E. Marian. The agreement provides as follows:

We the undersigned hereby enter into a Marketing Agreement of the manuscript entitled Coronaries/Cholesterol/Chlorine—Revised Edition authored by Joseph M. Price, M.D.

The agreement is entered into between Joseph M. Price, M.D., Joseph A. Price, Earl E. Marian, and Roy E. Schwasinger for the marketing of said manuscript.

Costs of initial marketing studies and related costs are to be paid by Earl E. Marian and Roy E. Schwasinger.

Profits are to be equally divided after costs of printing, binding, mailing, billing and handling are paid from the receipts of the sale of said publication.

Should Earl E. Marian and Roy C. [sic] Schwasinger fail to produce a marketing plan for said manuscript within 60 days from the date of this agreement this agreement becomes null and void.

2. On April 19, 1989, plaintiff Schwasinger and Marian wrote a letter to Joseph M. Price, M.D. and Joseph A. Price. This letter provides in pertinent part:

This letter is to set forth a marketing plan per out Agreement as of the 7th day of April, 1989, and your letter as of April 12, 1989. . . .

As per our Agreement, we propose that the manuscript be titled CORONARIES/CHOLESTEROL/CHLORINE/DIET to separate the use of parts of the book from the prior publication. . . .

As per our Agreement, Earl E. Marion, and Roy E. Schwasinger proposes [sic] that the first run of the published book be at least 10,000 copies. . . .

As agreed upon the initial marketing studies and related costs are to be paid by Mr. Marian and Mr. Schwasinger, this would include the first printing of the publication, however, after the sale of copies were made, the stated deductions would be made according to the Agreement dated the 7th day of April, 1989.

We propose to contact manufacturers of water treatment and purification products including bottled water facilities, The American Heart Association, American Cancer Association, American Association of Retired Persons, American Nurses Association, American Dietitic [sic] Association, American Pork Producers Association, American Cattlemens Association, National Cattlemens Association, American Poultry and Egg Boards, American Sheep Growers Association, Independent Retailers Association, American Hardware Association, American Manufacturers Association, Physical Rehabilitation Centers, Exercise Spas and physical fitness centers and other boards, associations, committees and associations with special interest including health insurance companies, in the well-being and health of people.

Your agreement on the proposed action as per Agreement is needed to proceed further and a meeting is to be held on the 22 day of April, 1989 to conclude this marketing agreement as per Agreement.

3. On April 22, 1989, defendants Joseph M. Price, M.D. and Joseph A. Price sent a memo to plaintiff and Marian which provided:

We, the undersigned, agree with your letter of April 19, 1989, and authorize you to proceed with printing of 10,000 or more copies of our book and marketing plan of same as per agreement dated April 7th, 1989.

4. Plaintiff never published the manuscript entitled Coronaries/Cholesterol/Chlorine—Revised Edition.

5. Plaintiff claims to have produced a manuscript which he has entitled Diet/Coronaries/Cholesterol/Chlorine. From the admissions made in open court and the court's independent review of the documents, the court finds as an undisputed fact that the first seven chapters of Diet / Coronaries / Cholesterol / Chlorine are taken virtually word for word from Coro-

*naries/Cholesterol/Chlorine*, authored by defendant Dr. Price and published in 1969. Chapters 8 through 10 were taken virtually word for word from the manuscript entitled *Coronaries/Cholesterol/Chlorine—* Revised Edition, authored by Dr. Price.

6. The manuscript entitled *Diet/Coronaries/Cholesterol/Chlorine* has never been published.

7. Joseph M. Price, M.D., authored the 1969 book entitled *Coronaries/Cholesterol/Chlorine.*

8. Joseph M. Price, M.D., authored the manuscript entitled *Coronaries/Cholesterol/Chlorine—*Revised Edition.

9. Plaintiff wrote none of the material contained in the manuscript entitled *Diet/Coronaries/Cholesterol/Chlorine;* he merely copied text from the original 1969 book and the revised manuscript.

10. Defendant Alta Enterprises, Inc. holds the copyright for the 1969 book entitled *Coronaries/Cholesterol/Chlorine.*

11. There is no written document assigning the copyright from Alta Enterprises to plaintiff.

Turning first to plaintiff's claim for breach of contract, the court finds that there are no matters in the record to show that the defendants failed to perform their part of the Marketing Agreement. The defendants provided the manuscript to the plaintiff. Since plaintiff never published the manuscript, no further performance by the defendants was required under the written Marketing Agreement.

■ Plaintiff claims that the defendants have been unjustly enriched by his effort in producing the manuscript entitled *Diet/Coronaries/Cholesterol/Chlorine.* Plaintiff did not actually author this manuscript. He merely copied chapters from Dr. Price's original book and revised manuscript. *Diet/Coronaries/Cholesterol/Chlorine* has never been published or sold by the defendants. The defendants have received no profits from this manuscript. The defendants have not been enriched by the plaintiff's efforts in producing the manuscript. Accordingly, plaintiff's claim for unjust enrichment must fail.

■ Plaintiff seeks a declaration of co-ownership of the copyright for *Diet/Coronaries/Cholesterol/Chlorine.* Copyright ownership "vests initially in the author or authors of the work. The authors of a joint work are co-owners of copyright in the work." 17 U.S.C. § 201(a). Generally, "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989). A joint work is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Plaintiff was not the author or co-author of *Diet/Coronaries/Cholesterol/Chlorine.* The only work that plaintiff appears to have performed on this manuscript was copying the work of Dr. Price. Plaintiff's efforts are insufficient to give him any rights as author of the work or co-owner of the copyright.

■ In Count IV of his complaint, plaintiff claims that he is entitled to seek damages for infringements of the copyright owned by defendant Alta Enterprises on the book *Coronaries/Cholesterol/Chlorine.* Pursuant to 17 U.S.C. § 501(b), the legal or beneficial owner of rights under a copyright is entitled to pursue actions for infringement of that copyright committed while he or she is the owner of it. Alta Enterprises is the legal owner of rights under the copyright. Transfer of copyright ownership is not valid unless made in writing signed by the owner of the rights being conveyed. 17 U.S.C. § 204(a). No such written instrument of conveyance has been presented to the court. Plaintiff does not appear to allege that such a written instrument of conveyance exists. Alta Enterprises has not transferred ownership of the copyright to *Coronaries/Cholesterol/Chlorine* to the plaintiff. Therefore, he

has no right to pursue copyright infringement claims for this book.

 In Count V, plaintiff cites 15 U.S.C. § 1125. That section of the Lanham Trademark Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). There is nothing before the court to indicate that any false designation of origin, or false descriptions or representations of fact exist in the present case. The only book to be published and to enter commerce was *Coronaries/Cholesterol/Chlorine,* published in 1969. There is no allegation that the published book contains false or misleading information as to its author or copyright holder. The other two manuscripts have not been published and have not entered into commerce.

To the extent that the Pretrial Order (Doc. 118) may be interpreted as containing additional claims for relief, the court has examined the record and finds no genuine issue as to any material fact as to any remaining claims. Accordingly, summary judgment in favor of the defendants is appropriate.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment (Doc. 147) is hereby granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Doc. 144) is hereby denied.